IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

GRAND TRUNK WESTERN
RAILROAD INC.,

       Plaintiff,      Case No. 3:06 CV 1749

  -vs-

                   MEMORANDUM OPINION

BROTHERHOOD OF MAINTENANCE
OF WAY EMPLOYEES DIVISION,

       Defendant.

KATZ, J.

  This case comes before the Court on two motions. First, Intervening-Plaintiff National Mediation Board ("NMB" or "Board") has filed a motion to be dismissed from the case (Doc. 76) to which Defendant Brotherhood of Maintenance of Way Employees Division ("BMWED" or "Union") has filed an opposition (Doc. 79), and NMB has filed a reply (Doc. 85). Plaintiff Grand Trunk Railroad ("GTW") responded to NMB's motion to be dismissed and BMWED's opposition (Doc. 88) and BMWED replied to GTW's response (Doc. 90).

  Second, NMB has filed a motion to dismiss or in the alternative, a motion for summary judgment (Doc. 98) in response to BMWED's cross-claim against NMB (Doc. 84). BMWED has filed an opposition (Doc. 104) and NMB has filed a reply (Doc. 120).

  For the reasons stated below, the Court concludes it lacks subject-matter jurisdiction over BMWED's cross-claim. The Court grants NMB's motion to dismiss it from the case and NMB's motion to dismiss BMWED's cross-claim.

**I. Background**

  **A. Facts**

The origin of the current action is a dispute between GTW and BMWED, which led GTW to file a Complaint for declaratory judgment and injunctive relief under the Railway Labor Act ("RLA"). (Doc. 1). GTW's Amended Complaint remains before this Court and seeks a permanent injunction requiring BMWED to give GTW a ten-day notice of any intent to strike, and damages for BMWED's illegal strike on July 19, 2006. (Doc. 10).

The dispute between GTW and BMWED began on December 3, 2004, when BMWED served notice on GTW that it sought changes in the Collective Bargaining Agreement ("CBA") between the parties. The two parties met and negotiated directly but negotiations failed to lead to an agreement.

On September 3, 2005, GTW applied for mediation with the NMB and the following day the NMB accepted GTW's application, docketed the dispute, and thereafter exercised jurisdiction over the dispute. Once the NMB gains jurisdiction, the RLA governs the dispute resolution process and prevents both parties from exercising self-help methods such as initiating a strike until the RLA statutory processes are completed. The RLA requires the NMB to use its "best efforts" to bring the parties to agreement and if the NMB determines that mediation is unsuccessful, then the NMB must induce the parties to submit to voluntary arbitration. If either party turns down the arbitration, then the NMB should release the parties from mediation. After the NMB releases the parties, a mandatory thirty-day "cooling off" period begins that requires the parties to maintain the status quo. After the "cooling off" period ends, provided the President does not create an Emergency Board, the parties are able to resort to economic self-help. Here, the parties met with the NMB mediator on several occasions between November 2005 and March 2006 without reaching an agreement. After the mediation in March, the NMB recessed the negotiations. According to the NMB, a recess in mediation is a mediation tool designed to persuade the parties

to reach an agreement. During the recess, the NMB discourages meetings between the parties without NMB's approval.

During the recess, BMWED sent a series of letters to NMB requesting NMB to schedule mediation. On June 15, 2006, NMB responded to BMWED's second letter stating that "no additional mediation sessions would be scheduled," and that the parties should "review their respective positions if they intended to reach agreement" and "if the parties have reviewed their positions and are now prepared to engage in meaningful negotiations that they advise the Mediator, in writing, including how they have modified their position." In response to NMB recessing mediation, BMWED demanded that GTW directly negotiate with BMWED. GTW declined to meet without the NMB's mediator. After again requesting NMB to schedule mediation and GTW's continued refusal to meet without a mediator, BMWED initiated a strike against GTW on July 19, 2006.

Also on July 19, 2006, and in response to the strike, GTW filed its Complaint and a motion for a Temporary Restraining Order ("TRO"). The Court denied GTW's motion for a TRO because the evidence at the time indicated that GTW, by failing to meet directly with BMWED, was ineligible for an injunction under the Norris LaGuardia Act ("NLGA") because GTW had not made "every reasonable effort" to negotiate a new labor contract as required by the NLGA. (Doc. 4, Order).

After the Court denied the TRO, BMWED and GTW negotiated directly but again failed to reach agreement. The parties also unsuccessfully attempted mediation with the NMB on August 26-28, 2006. On August 28, 2006, NMB filed a motion to intervene as of right (Doc. 15) in this case as a Plaintiff and the Court granted NMB's motion on August 29, 2006. (Doc. 16). According to NMB, the Board intervened to request that the Court maintain NMB's statutory

3

authority under the RLA to mediate the dispute between GTW and BMWED. NMB believed that BMWED had taken the position that BMWED had a right to strike because GTW refused to negotiate outside of mediation. On August 29, 2006, the NMB advised the parties that it recessed the mediation until further notice and again informed the parties that if the parties reassess their positions and are ready to negotiate productively, then they should notify the mediator.

After initially denying the TRO, the Court held a hearing on GTW's motion for a preliminary injunction. The Court granted GTW's motion and issued a preliminary injunction finding that, contrary to BMWED's position, the law did not require GTW to negotiate directly with BMWED during the mediation process to fulfill the "every reasonable effort" requirement. (Doc. 47). The Court found that the RLA's "status quo" requirement controlled the dispute between GTW and BMWED. BMWED appealed the decision granting a preliminary injunction and the Sixth Circuit Court of Appeals affirmed the judgment in *Grand Trunk West. RR. v. Brotherhood of Maint. Way Employees Div.*, 497 F.3d 568, 573 (6th Cir. 2007).

Currently, BMWED and GTW have reached agreement on the CBA dispute through direct negotiations and NMB has closed its file on the matter. As part of its defense to GTW's remaining claims, BMWED argues that NMB acted *ultra vires* and therefore, BMWED's strike did not violate the RLA.

### B. Procedural History

On December 4, 2008, NMB filed a motion to be dismissed from the case because, it argues, the Court has already resolved the legal issue of interest to NMB and no legal justification exists for NMB to remain a party. (Doc. 76). BMWED filed an opposition to the dismissal arguing that NMB should remain in the case as a necessary party or should remain under permissive joinder principles (Doc. 79), to which NMB has filed a reply (Doc. 85). Additionally,

4

GTW has filed a response in support of NMB's motion (Doc. 88), and BMWED has replied to GTW's response (Doc. 90).

BMWED also filed a cross-claim against NMB seeking a declaratory judgment that NMB acted *ultra vires*. (Doc. 84). NMB filed a motion to dismiss or in the alternative, a motion for summary judgment in response to BMWED's cross-claims based on several grounds: (1) the Court lacks subject-matter jurisdiction because no actual controversy exists; (2) the Court should not exercise its discretion to grant a declaratory judgment; (3) BMWED is precluded from relitigating the issue; and (4) NMB did not violate the RLA. (Doc. 98). BMWED has filed an opposition to NMB's motion to dismiss (Doc. 104), and NMB has replied to BMWED's opposition (Doc. 120).

**II. Standards of Review**

    **A. Motion to Dismiss**

A defendant filing a Rule 12(b)(1) motion to dismiss can attack jurisdiction either facially or factually. *See DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004) (citing *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1133-35 (6th Cir. 1996); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994); *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). A facial attack requires a court to consider the plaintiff's allegations as true. *Id.* A factual attack, however, requires the court to weigh the evidence relating to subject-matter jurisdiction to support its determination as to jurisdiction. *Id.* Additionally, the plaintiff bears the burden of proving the existence of subject-matter jurisdiction. *Id.* Here, NMB factually challenges jurisdiction.

    **B. Summary Judgment**

5

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The Court views the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25.

Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)). The party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Ciminillo v. Streicher,* 434 F.3d 461, 464 (6th Cir. 2006); *Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

6

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071; *Bultema v. United States*, 359 F.3d 379, 382 (6th Cir. 2004) . The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

## III. Discussion

Before addressing NMB's motion to be dismissed from the case, the Court addresses NMB's motion to dismiss or in the alternative, motion for summary judgment in response to BMWED's cross-claim. Resolution of BMWED's cross-claim impacts the Court's ruling on NMB's motion to be dismissed from the case.

### A. BMWED's Cross-Claim

In its cross-claim, BMWED requests the Court declare that "the NMB's conditioning resumption of mediation on changes in position by both parties was in excess of the NMB's authority and ultra vires; that the NMB subverted the RLA bargaining and mediation processes,

7

and that the NMB's action was contrary to RLA policy for voluntary agreements and in violation of the RLA." (Doc. 84 at 12). To support its claim, BMWED points to language of the RLA and RLA precedent. NMB argues that the Court lacks subject-matter jurisdiction to issue a declaratory judgment because no actual controversy exists between NMB and BMWED.

The Declaratory Judgment Act governs whether this Court has subject-matter jurisdiction. The Act requires a "case of actual controversy." *See* 28 U.S.C. § 2201 (2006). This requirement comports with Article III, section 2 of the United States Constitution's case or controversy requirement. *See MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 (2007) ("[T]he phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III.") (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937). Absent an actual case or controversy, federal courts do not have the power to hear the matter. *Allen v. Wright*, 468 U.S. 737, 752 (1984). To ensure compliance with Article III, courts have developed requirements termed "justiciability doctrines that include the notions of standing, ripeness,[1] mootness, and political question." *Id.* NMB argues that these "justiciability doctrines" deprive the Court of an actual controversy.

Standing, arguably the most important "justiciability doctrine," requires a plaintiff to show: (1) he suffered an injury-in-fact that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) that plaintiff's injury is "fairly traceable to the challenged action of the defendant"; and (3) that the injury will likely be "redressed by a favorable decision." *Fednav, Ltd. v. Chester*, 547 F.3d 607 (6th Cir. 2008) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992)). For standing in the context of declaratory judgments,

---

[1] Standing and ripeness often overlap in the context of declaratory judgments. "As there is no obligation to favor one of these justiciability doctrines over the other and as none of these questions goes to the merits of the case, [the Court] may address them in any sequence …." *See Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (en banc). Here, the Court need only address standing.

8

"one must ask whether the parties have 'adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment' even though the injury-in-fact has not yet been completed." *Nat'l. Rifle Ass'n. of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997) (quoting *Golden v. Zwickler*, 394 U.S. 103, 108 (1969)). Further, "allegations of past injury alone are not sufficient to confer standing. The plaintiff must allege and/or 'demonstrate actual present harm or a significant possibility of future harm.'" *Fieger v. Ferry*, 471 F.3d 637, 643 (6th Cir. 2006) (quoting *Peoples Rights Org., Inc. v. City of Columbus*, 152 F.3d 522, 527 (6th Cir.1998)).

In its Complaint, BMWED alleges that it "was harmed by the NMB's actions and ultra vires acts because the NMB withheld statutory processes, impeded BMWED in its exercise of its rights, pressured BMWED to change its position by withholding statutory processes, and conditioned performance of the Board's statutory functions on concessions by the parties, all in violation of the RLA" and that "BMWED is subject to the jurisdiction of the NMB in future collective bargaining disputes and may again be subject to a recess in mediation subject to a condition requiring a change in position." (Doc. 84 at ¶¶ 63-64).

At this point, BMWED's alleged future injury is not of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *See Grendell v. Ohio Supreme Court,* 252 F.3d 828, 833 (6th Cir. 2001) (determining that "threat of … future injury is highly conjectural, resting on a string of actions the occurrence of which is merely speculative"). BMWED premises its potential for future harm on the occurrence of a number of speculative events such as a future CBA dispute that results in one of the parties requesting a mediator or the NMB on its own entering the dispute, the mediation not leading to an agreement, the mediator calling a recess[2], and

---

[2] While not binding, this Court recognized in its opinion granting a preliminary injunction that the NMB's statutory authority to recess mediations is a valid tool to reach agreements between the parties and BMWED does not challenge this practice. (Doc. 46 at 8).

the mediator conditioning resumption of mediation on a change in position. BMWED's alleged future harm occurs, if at all, only at the point NMB requires substantive changes from the parties before scheduling a mediation session. BMWED, therefore, has not demonstrated a significant possibility of future harm.

As part of its alleged harm, BMWED claims that NMB "impeded BMWED in its exercise of its rights." Presumably, BMWED seeks to prevent NMB from impeding its right to strike and it is this right that forms the basis of the dispute between GTW and BMWED. Any future injury based on BMWED's right to strike, however, is far from immediate. Congress designed the RLA with the purpose of preventing and delaying strikes that could disrupt interstate commerce. *See Detroit & Toledo Shoreline RR. Co. v. United Transportation Union, et al.,* 396 U.S. 142,148 (1969). The RLA by its nature consists of time-consuming steps that parties must go through before resorting to self-help. The Supreme Court explained that "'the procedures of the Act are purposely long and drawn out, based on the hope that reason and practical considerations will provide in time an agreement that resolves the dispute.'" *Id.* (quoting *Brotherhood of Railway & Steamship Clerks, etc. v. Florida E.C.R. Co*., 384 U.S. 238, 246 (1966)). Before any right to strike can mature, the NMB must first release the parties from mediation; the NMB has a great deal of discretion to determine how to conduct mediation and when to end mediations as unsuccessful. *See Local 808, Bldg. Maint. Serv. & RR Workers v. National Mediation Bd.,* 888 F.2d 1428, 1434 (D.C. Cir. 1989) (requiring "a showing of patent official bad faith, [otherwise] a court has no authority to review the Board's decision to keep a dispute in mediation"). Even after the NMB releases the parties from mediation, the RLA requires the NMB to proffer voluntary arbitration and provides for a thirty-day "cooling off" period before either party may resort to self-help. *See* 45 U.S.C. § 155. Additionally, during the "cooling off" period the President may create an

Emergency Board that further delays a strike. *See* § 160. Thus, it is far from immediate that NMB will impede any future right of BMWED to strike.

Nor does BMWED demonstrate that it presently suffers any harm to confer standing, as there exists no current dispute before the NMB and the parties to the original dispute have reached agreement without a mediator.[3] NMB's Complaint alleges only past harm and past injuries are insufficient to confer standing. *See Fieger*, 471 F.3d at 643. The Court therefore, concludes that BMWED has not established a "case of actual controversy" required under the Declaratory Judgment Act. As BMWED has not established an actual controversy, the Court dismisses BMWED's cross-claim for lack of subject-matter jurisdiction.

Even assuming an actual controversy existed, the Court would decline to exercise its discretion to grant a declaratory judgment. "'A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest.'" *Vistein v. Am. Registry of Radiologic Technologists*, 509 F. Supp. 2d 666 (N.D. Ohio 2007) (quoting *Eccles v. Peoples Bank,* 333 U.S. 426, 431 (1948)). The Sixth Circuit has established the following five factors to consider whether to grant a declaratory judgment:

(1) whether the declaratory action would settle the controversy;

---

[3] BMWED argues its claim against NMB is capable of repetition, yet evading review. (Doc. 104 at 6-8). This exception to the mootness doctrine, however, does not apply. Mootness applies when "'the issues presented are no longer 'live' or parties lack a legally cognizable interest in the outcome'" because of subsequent events after the case is filed. *Campbell v. PMI Food Equip. Group, Inc.,* 509 F.3d 776, 781 (6th Cir. 2007) (quoting *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 530 (6th Cir. 2001)). Standing principles determine whether there exists a case or controversy at the time the party filed the Complaint. "Standing admits of no similar exception; if a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review will not entitle the complainant to a federal judicial forum." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, 170 (2000). The Court determines standing at the time BMWED commenced its cross-claim against NMB.

> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
> (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for res judicata;'
> (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and
> (5) whether there is an alternative remedy which is better or more effective.

*Scottsdale Ins. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008) (citing *Grand Trunk W. R.R. Co. v. Consol. Rail Co.*, 746 F.3d 323, 326 (6th Cir. 1984)). "Ultimately, the dispositive inquiries are 'whether the judgment will serve a useful purpose in clarifying and settling the legal relationships in issue and whether it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Vistein*, 509 F. Supp. 2d at 681 (quoting *Brotherhood Mut. Ins. Co. v. United Apostolic Lighthouse, Inc.,* 200 F. Supp. 2d 689, 692 (E.D. Ky. 2002)).

The Court finds the first three factors of particular relevance in this case. A declaratory judgment that NMB acted *ultra vires* would not settle the controversy between GTW and BMWED. Even if the Court declared that NMB exceeded its authority, it remains unsettled whether BMWED's actions violated the RLA when it initiated the strike. BMWED essentially seeks to gain a litigation advantage in its dispute with GTW by establishing an affirmative defense to GTW's remaining claims.[4] *See Calderon v. Ashmus,* 523 U.S. 740, 746-47 (1998) (concluding that respondent sought to gain an advantage in litigation "by obtaining an advance ruling on an affirmative defense" and that "[a]ny judgment … would not resolve the entire case or controversy … but would merely determine a collateral legal issue governing certain aspects of their pending or future suits").

---

[4] BMWED argues that a declaratory judgment "will help settle the fundamental issue of whether BMWED violated a statutory duty in striking GTW on July 19, 2006. And, if the strike was not illegal, then there is no predicate for relief sought by GTW." (Doc. 104 at 15). The Court disagrees. A determination that NMB acted *ultra vires* does not resolve the issue of BMWED's statutory duties under RLA because NMB's *ultra vires* act does not necessarily release BMWED from any remaining statutory duties.

12

As for the "procedural fencing" factor, the Court finds the timing of the cross-claim questionable. Rather than seeking a declaratory judgment of its rights and legal obligations at the time the NMB allegedly acted *ultra vires*, BMWED initiated a strike, responded to GTW's Complaint, opposed NMB's intervention, appealed the Court's grant of a preliminary injunction and settled its initial dispute with GTW. Only after NMB filed its motion to dismiss, however, did BMWED file its cross-claim against NMB. Accordingly, the Court finds that it would not be in the public interest to issue a declaratory judgment.

**B. NMB's Motion to be Dismissed from the Suit**

NMB asks this Court to dismiss it from the lawsuit. (Doc. 76). NMB argues that there exists no legal justification for it to remain a party to the lawsuit because there is no pending mediation between GTW and BMWED and the remaining disagreements between GTW and BMWED do not affect NMB's statutory authority. *Id.* According to NMB, it initially intervened as a Plaintiff in the case because it "was necessary since it was BMWED's position that it had the right to strike because GTW would not agree to negotiate directly outside the mediation process." *Id.* At the time GTW filed its Complaint, the parties were under NMB's jurisdiction and the NMB sought to protect the RLA required mediation process. *Id.* Since that time, this Court and the Sixth Circuit determined that the RLA did not require GTW to negotiate directly with BMWED during the mediation process. Additionally, GTW and BMWED have since reached an agreement on the matter originally before NMB and NMB has closed its file. NMB argues that these events render its interests in the suit moot. The Court agrees with NMB that NMB's original reason for intervening no longer presents a "live" issue and subsequent events have rendered NMB without "a legally cognizable interest in the outcome" of the case. *Campbell,* 509 F.3d at 781. Therefore, absent a cognizable interest, there exists no reason for NMB to remain in the case.

13

BMWED argues that the Court should keep NMB in the current case or join BMWED's claims against NMB. BMWED also questions NMB's motivation and timing of its request for dismissal because NMB remained in the case six months after it closed the file on the mediation and only sought dismissal after BMWED's discovery requests.[5] (Doc. 79 at 11). BMWED first argues that NMB is a necessary party[6] to the litigation under Fed. R. of Civ. P. 19 and cites the following portion of Rule 19:

> Persons Required to Be Joined if Feasible.
> (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> (A) in that person's absence, the court cannot accord complete relief among existing parties ….

Fed. R. Civ. P. 19(a)(1)(A). Here, the Court can accord complete relief without NMB as a party. GTW seeks a permanent injunction that would require BMWED to give ten-days notice, damages for BMWED's illegal strike, and attorney fees. (Doc. 10). Nothing prevents BMWED from presenting its legal theories and defenses. BMWED can still present evidence as to the legality of its actions under the RLA, which the Court will consider when determining whether to issue a permanent injunction and award damages. Further, BMWED fails to cite to any cases supporting its theory that NMB is a required party because without it, BMWED would not be able to advance a complete and effective legal defense. Therefore, the Court determines that NMB is not a required party.

---

[5] Since the filing of BMWED's opposition, this Court has granted NMB's request for a protective order against complying with BMWED's discovery requests because the Court determined "that to comply with the requests would be to invade the confidentiality of the mediation process, which is asserted to be against public policy favoring the sanctity of the mediation process, similar to the sanctity granted to settlement negotiations." (Doc. 125 at 2). This ruling will undoubtedly have a negative effect on BMWED's ability to presents its legal theory and BMWED's argument no longer remains valid that the Court should retain NMB as a party because BMWED has served discovery requests on NMB.

[6] The Court will use the term "required party" instead of "necessary party" as recent amendments to Rule 19 replaced the word "necessary" with "required". This does not change the Court's analysis because the changes to Rule 19 were intended as stylistic only. *See Republic of Philippines v. Pimentel*, 128 S. Ct. 2180, 2184 (2008).

BMWED next argues that Rule 20 allows for permissive joinder of NMB because "BMWED asserts a right to relief against it that arises from, and is connected with, the same series of transactions and occurrences as are at issue in the litigation between GTW and BMWED." (Doc. 79 at 14). Under Rule 20, a court may join a person as a defendant if both requirements below are met:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). The Court finds Rule 20 inapplicable in this case because GTW has not asserted any right to relief against NMB and BMWED jointly, severally, or in the alternative, nor are the remaining questions of law or facts common to BMWED and NMB. As the facts in the case are largely undisputed, the issues remaining in the dispute between GTW and BMWED are legal and as discussed earlier, BMWED's legal duties under the RLA are distinct from NMB's duties. Further, as the Court has already dismissed BMWED's cross-claim, BMWED's argument that it asserts a right to relief against NMB no longer applies. Accordingly, the Court concludes that NMB no longer has a "a legally cognizable interest in the outcome" in the case and dismisses NMB as a party on mootness grounds.[7]

**IV. Conclusion**

---

[7] For clarification, the Court determined standing for BMWED's cross-claim at the time BMWED filed its cross-claim and concluded that at that time, BMWED lacked standing for the declaratory relief it sought because it could not show actual present harm or a significant possibility of future harm. Mootness and mootness exceptions did not apply to the cross-claim. For NMB's motion to be dismissed from the case, mootness applies because when NMB intervened a controversy existed and subsequent events have rendered the initial controversy moot and BMWED failed to establish a new controversy by filing its cross-claim.

For the above stated reasons, the Court grants NMB's motion to be dismissed from the case (Doc. 76) and grants in full NMB's motion to dismiss BMWED's cross-claim against NMB (Doc. 98).

IT IS SO ORDERED.

                                                s/ *David A. Katz*  
                                                DAVID A. KATZ  
                                                U. S. DISTRICT JUDGE